**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**ESTEBAN BURROUGHS,** **CASE NO.**

**Plaintiff,**

**v.**

**CSX INTERMODAL TERMINALS, INC.,**

**Defendant.**
_________________________________/

## COMPLAINT

Plaintiff, ESTEBAN BURROUGHS hereby sues Defendant, CSX INTERMODAL TERMINALS, INC. and alleges:

## JURISDICTION

1. This is an action brought under the Americans with Disabilities Act (ADA), codified at 42 U.S.C. § 12101, et seq., Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq., and 42 U.S.C. §1981a.

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, ESTEBAN BURROUGHS, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of his race and actual and/or perceived

disability and/or record of impairment of which Defendant is aware. Further, Plaintiff requested an accommodation which was granted but Plaintiff paid the price-his termination.

4. At all times pertinent hereto, Defendant, CSX INTERMODAL TERMINALS, INC., has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began his employment with Defendant on or about December 11, 2023, and held the position of Intermodal Service Employee (ISE) at the time of his wrongful termination on September 13, 2024.

**7.** Plaintiff was a loyal and dedicated employee.

8. Despite his stellar work performance during his employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his race, actual and/or perceived disability, and because he requested an accommodation and was the victim of retaliation thereafter.

9. The disparate treatment and retaliation came at the hands of specifically, but not limited to, Senior Terminal Manager Preston Kirby, Caucasian.

10. Plaintiff suffers from a serious disabling medical condition, specifically Type 2 Diabetes, of which Defendant was aware.

11. In or around November 2023, Plaintiff applied for employment with Defendant. As part of the application process, Plaintiff disclosed detailed information regarding Plaintiff's Type 2 Diabetes, thereby providing Defendant with notice of Plaintiff's disability before Plaintiff was hired.

12. On July 7, 2024, while working, Plaintiff began experiencing lightheadedness and dizziness. Plaintiff reported these symptoms to Supervisor Josh McDaniel, Caucasian. When Plaintiff's condition did not improve, Plaintiff left work and sought medical treatment at a hospital.

13. At the hospital, medical staff informed Plaintiff that Plaintiff's Type 2 Diabetes had worsened and required treatment before Plaintiff could safely return to work. Plaintiff was released several hours later and instructed to follow up with Plaintiff's primary care physician, Mario A. Pulido, M.D., for completion of the necessary medical-leave documentation.

14. Subsequently, on July 7, 2024, Plaintiff met with Dr. Pulido, who provided Defendant with documentation stating that Plaintiff required medical leave

from July 7, 2024, through September 7, 2024, and would require Dr. Pulido's approval before returning to work due to the severity of Plaintiff's condition.

15. That same day, Plaintiff provided the medical-leave documentation to Defendant by fax. Defendant's medical team, CSX Medical Services Department, approved Plaintiff's medical leave that day, marking the beginning of Plaintiff's approved medical leave. Plaintiff then notified Kirby by telephone of the approved leave and verbally confirmed that Kirby received the necessary medical documentation.

16. From July 7, 2024, through July 14, 2024, Defendant recorded Plaintiff as absent on five days despite Plaintiff being on approved medical leave during that period. By recording Plaintiff as absent while Plaintiff was on approved medical leave, Defendant improperly characterized Plaintiff's approved medical leave as unexcused absences.

17. On August 10, 2024, Senior Manager of Labor Relations Tina Keveney, emailed Representative Mike Goodyear, in response to Plaintiff’s approved medical leave. In the email, Keveney stated that although Plaintiff had been hired on December 11, 2023, Defendant intended to extend Plaintiff's probationary period because of Plaintiff's approved medical leave. As a result, Plaintiff would be required to complete an additional 45 days of probation upon returning from medical leave. Plaintiff was not made aware of this extension until a later date.

18. In or around early September 2024, fellow ISE Nwachukwu Justice Ezem, African American, was at work discussing with Union Representative Reggie Carter, African American, concerns regarding the treatment of African American employees by Defendant, including that African American employees were disciplined and punished more frequently than Caucasian employees for similar conduct.

19. During the conversation, Carter asked Ezem whether Ezem knew Plaintiff. After Ezem confirmed that Plaintiff and Ezem were close friends, Carter informed Ezem that Carter had recently spoken with Kirby regarding Plaintiff. Carter stated that Kirby had recently approached Carter with the intention of terminating Plaintiff, but Carter advised Kirby that Plaintiff could not be terminated because Plaintiff was on approved medical leave. Ezem asked Carter why Kirby was seeking Plaintiff's termination but did not receive an answer.

20. Ezem subsequently called Plaintiff the same day and relayed the conversation. Plaintiff was confused by Kirby's attempt to terminate him because Plaintiff had not been involved in any workplace incident or received any disciplinary action between the commencement of his approved medical leave and the conversation described by Ezem.

21. On September 9, 2024, Plaintiff’s approved medical leave ended and Plaintiff returned to work with no restrictions.

22. On September 11, 2024, Plaintiff was working near the tracks while ISE employees drove through the area during heavy rain. Although other employees slowed their vehicles both for safety and to avoid splashing Plaintiff, ISE Joshua Oliver, Caucasian, drove through a large puddle at a speed that caused water to drench Plaintiff. After Oliver parked, Plaintiff approached Oliver and asked whether Oliver had seen the puddle. Oliver repeatedly responded, "what," leading Plaintiff to believe he had not heard Plaintiff.

23. Later the same day, Oliver approached Plaintiff and asked about the earlier interaction. Plaintiff again asked whether Oliver had seen the puddle or Plaintiff before driving through it. Oliver responded, "What, you think I did it on purpose?" Plaintiff replied, "You didn't even apologize," but Oliver repeated the same question rather than acknowledging the incident or apologizing. Plaintiff ended the conversation and returned to work.

24. Later that evening, Plaintiff attempted to speak with Oliver while both cars were stopped next to each other off company property. Oliver did not respond, and Plaintiff thereafter left the area without further interaction.

25. On September 12, 2024, when Plaintiff arrived home after the interaction with Oliver, Plaintiff returned a call from Kirby after discovering that Kirby had left a voicemail requesting that Plaintiff call as soon as possible. Kirby asked Plaintiff about the interaction with Oliver after work, and Plaintiff explained

that it consisted only of an exchange of words while Plaintiff was off the clock and off Defendant's premises. Kirby stated that coworkers were not permitted to have conflicts and informed Plaintiff that Plaintiff was being placed "out of service" pending an investigation.

26. Kirby further instructed Plaintiff not to return to Defendant's premises and stated that the matter was not looking good, that Kirby would consult with Labor Relations, and that the matter was out of Kirby's hands. When Plaintiff asked what this meant for Plaintiff's employment, Kirby stated that the interaction constituted grounds for termination and that Plaintiff would most likely receive termination papers by mail.

27. Later that same day, Plaintiff received a call from ISE Tammy Brown, African American, while Brown was working. Brown had heard about Plaintiff being put out of service and wanted to inform Plaintiff that Oliver was facing different treatment than Plaintiff. Despite being involved in the same alleged conflict, Oliver remained working and had not been placed out of service or subjected to an investigation as Plaintiff.

28. On September 16, 2024, Plaintiff received Defendant's termination papers by mail. Defendant did not reach out to Plaintiff at any point to conduct an investigation prior to firing Plaintiff. The termination documents did not identify a reason for Plaintiff's termination, asserting that no reason was required because

Plaintiff remained within the probationary period of employment. However, Plaintiff was only in the probation period because Defendant had extended it by an additional 45 days because of Plaintiff's approved medical leave.

29. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

**COUNT I**
**RACE DISCRIMINATION**

30. Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31. This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §2000e et seq. This is a disparate treatment claim.

32. Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated Caucasian employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his race.

33. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

34. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

35. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

36. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant and impaired Plaintiff's right to make and enforce contracts.

37. The events set forth herein led, at least in part, to Plaintiff's termination.

38. Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §1981 and 42 U.S.C. §2000e et seq.

39. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the

past, are permanent and continuing. Plaintiff is entitled to injunctive relief and punitive damages.

**COUNT II**
**DISABILITY DISCRIMINATION**

40. Paragraphs 1 through 29 above are re-alleged and incorporated herein.

41. This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/or record of impairment, brought under 42 U.S.C. §12101, et seq.

42. Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

43. Defendant is liable for the differential treatment which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

44. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

45. In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

46. The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

47. Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

48. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue into the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

**COUNT III**
**ADA RETALIATION**

49. Paragraphs 1 through 29 above are re-alleged and incorporated.

50. Defendant is an employer as that term is used under the applicable statutes referenced above.

51. This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203.

52. Defendant retaliated against Plaintiff for requesting time off as an accommodation for his disability by firing him.

53. Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq. or encouraging another to do so.

54. The foregoing unlawful actions by Defendant were purposeful.

55. Because of Plaintiff's request for an accommodation and taking time off for his disabling condition, he was fired.

56. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely

continue into the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 4th day of September, 2026.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle2@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF